**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**February 13, 2006**

**Charles R. Fulbruge III**
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 05-30052

In the Matter of: SUZANNE BRUNAZZI PAXTON,

Debtor,

* * * * * * * *

MARVIN EDWARD HERRINGTON, ANNETTE KNIGHTEN HERRINGTON,

Appellants,

VERSUS

THOMAS A. GRANT, III, COBA, L.L.C., JOE BAILEY GRANT, GAIL GRANT,

Appellees.

Appeal from the United States District Court
for the Western District of Louisiana

Before DAVIS, SMITH and DENNIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Appellants, Marvin and Annette Herrington, appeal a district court judgment setting aside a tax sale of the interest of Joe Bailey Grant, one co-owner of the property, for lack of sufficient notice of the sale and as to the interest of Thomas A. Grant, the other co-owner, for violation of an automatic stay. We uphold the

1

district court's judgment setting aside the tax sale of Joe Bailey Grant's interest for lack of sufficient notice. However, for the reasons that follow, we vacate the court's order setting aside the sale of Thomas A. Grant's interest for violation of the automatic stay and remand for further proceedings.

## I.

Two brothers and their wives owned in indivision a 36-acre tract of immovable property in Richland Parish, Louisiana. Thomas A. Grant ("T.A. Grant") and his wife, Suzanne Brunazzi Grant Paxton ("Suzanne"), owned one half of the property, and T.A's brother, Joe Bailey Grant ("J.B. Grant") and his wife, Gail Grant, owned the other one half. In 1990, Suzanne declared bankruptcy after a divorce from T.A. Grant. In 1994, the bankruptcy court ruled that the interest in the property owned by Suzanne and her ex-husband was properly included in the bankruptcy estate and was owned by the Bankruptcy Trustee, Allen Harvey ("Bankruptcy Trustee" or "Trustee").

In June of 1996, J.B. and Gail Grant executed a special mortgage in favor of the Central Bank in Monroe, Louisiana, burdening fifteen different properties, including their half interest in the property at issue.

In December of 1996, the Richland Parish sheriff's office followed the same procedure it had followed in earlier years, and sent a single bill for all *ad valorem* taxes due on the property by

2

certified mail to T.A. Grant's law office. All of the previous bills had been paid. The 1996 bill, however, was not paid, and in May of 1997, the Sheriff sent a delinquency notice to the same address by certified mail, advising of the tax delinquency and the impending tax sale if the taxes remained unpaid. The tax bill remained unpaid.

During bankruptcy proceedings, T.A. Grant testified that he did not remember receiving the notices and could not find them in his records. Although the notices had been sent by certified mail, there was no evidence that T.A. Grant had signed for the notices. The Bankruptcy Trustee also testified that he had no record of receiving the notices, although T.A. Grant would normally have sent them to him. There was also no evidence that notices had been sent to the Trustee, J.B. and Gail Grant, or to Central Bank. The Sheriff did, however, publish notice of the impending tax sale in the Richland Parish newspaper.

The taxes remained unpaid, and the property was sold to the Herringtons at the tax sale in May 1997. The property was estimated to be worth more than $70,000; the taxes owed were $118.19, and the Herringtons bought the property for a total of $227.63. The Sheriff then sent a notice of the sale by first class mail to T. A. Grant at the same address, stating that the property could be redeemed under state law. T.A. Grant did not respond, and no evidence was provided that T. A. Grant received this notice or

3

that this notice was sent to the Bankruptcy Trustee, J.B. and Gail Grant, or to Central Bank or its successors.

In 2001, T.A. Grant bought the Bankruptcy Trustee's interest in the 15 parcels of land, including the property at issue. He purchased the property by a non-warranty deed for a total of $15,000.

At some point after the tax sale, Bank One, N.A. ("Bank One") became the legal successor to Central Bank through a series of corporate mergers, thus giving it a security interest in J.B. Grant's interest. In 2002, Bank One assigned its interest in the J.B. Grant mortgage to Coba, LLC.

In March 2003, T.A. Grant filed suit in bankruptcy court against the Herringtons, seeking to annul the tax sale. He also added Coba and J.B. Grant as additional defendants. Coba filed a cross-claim against the Herringtons. Following trial, the court rendered judgment against the Herringtons and declared the tax sale null because it was held in violation of the automatic stay, and also because of inadequate notice of the sale, it violated the due process rights of J.B. Grant, Coba, and T.A. Grant, as the assignee of the Bankruptcy Trustee.

On appeal, the district court agreed with all aspects of the bankruptcy court's ruling except it concluded that the Bankruptcy Trustee's interest in the property was not recorded or otherwise reasonably identifiable to the taxing authorities; thus,

4

publication of the sale in the parish newspaper *was* sufficient notice as to the Trustee.  The district court also found that only T.A. Grant, as the Trustee's assignee, and not J.B. Grant or Coba, had "statutory standing" to assert that the sale was null as a violation of the automatic stay.  The district court then declared the sale of T.A. Grant's interest in the property void for violation of the stay.

Based on the district court's judgment, the sale of J.B. Grant's interest was invalid because he received insufficient notice of the tax sale.  His mortgage holder, Coba, similarly retains its interest because of insufficient notice.  The sale of T.A.'s interest was invalid because the tax sale violated the automatic stay.  The Herringtons were therefore left without any interest in the property.

## II.

### A.

Appellants first argue that the bankruptcy and district courts erred in finding that J.B. and Gail Grant were not given sufficient notice of the tax sale to satisfy the procedural due process requirements set forth in <u>Mennonite Board of Missions v. Adams</u>, 462 U.S. 791 (1983).  The district court found that the notice to T.A. Grant's address "simply does not satisfy the <u>Mennonite</u> requirement of notice reasonably calculated to apprise a party [J.B. and Gail Grant] of a proceeding which adversely affected that party's

5

property interest."

Second, appellants contend that the district court erred in finding that Coba, as assignee of Bank One, could pursue the due process claims of its assignor. The district court found that "a valid assignment confers upon the assignee standing to sue in place of the assignor."

Third, appellants argue that COBA lacks standing because it has not proven injury. The district court held that the tax sale, if recognized, would divest Coba of its interest in the collateral, resulting in a harm that is both concrete and actual.

After reviewing the record, we are persuaded that the bankruptcy court and district court committed no reversible error in arriving at their factual findings and legal conclusions on the above issues.

**B.**

Appellants also argue that when T.A. Grant purchased the property from the Bankruptcy Trustee, this sale did not convey the Trustee's statutory authority to avoid the tax sale for violation of the automatic stay. T.A. Grant, on the other hand, argues that when the Bankruptcy Trustee assigned to him the Trustee's rights in the property, this included an assignment of the Trustee's rights under 11 U.S.C. § 362 to avoid the tax sale for violation of the automatic stay.

Although T.A. Grant contends that the Trustee's authority to

set aside the sale is found in § 362, this section on its face does not give the trustee the right to set aside a transfer, and appellants cite no persuasive authority that the Trustee has that power under § 362. The section of the Bankruptcy Code that gives the Trustee the authority to avoid a post-petition transfer is 11 U.S.C. § 549, which provides:

> (a) Except as provided in subsection (b) or (c) or this section, the trustee may avoid a transfer of property of the estate--
>
> (1) that occurs after the commencement of the case; and
>
> .....
>
> (2)(B) that is not authorized under this title or by the court.
>
> .....

This is consistent with our decision in In re Pointer, 952 F.2d 82 (5th Cir.1992). The issue presented in Pointer was whether *ad valorem* tax liens, which attach post-petition to property of a bankruptcy estate, violate the automatic stay. Before reaching that issue, however, the court addressed the question of whether "a creditor has standing to seek relief for an alleged violation of the automatic stay." Id. at 85. The court concluded that Pointer, a creditor, lacked standing under the Bankruptcy Code to avoid the post-petition tax liens as violative of the stay because standing to enforce the stay violation was granted solely to the trustee or debtor-in-possession under § 549. Id. at 87-8.

7

In determining whether Pointer could establish statutory standing, the court "turn[ed] to two sections in the Bankruptcy Code which address the question of standing to bring suit for violations of the automatic stay." Id. at 86. The court initially concluded that Pointer was not seeking relief under § 362(h), which allows recovery of actual damages, including costs and attorney's fees, for willful violations of the stay;[1] but rather, Pointer sought to invalidate the post-petition liens as violative of the automatic stay. The court stated that "the Code specifically addresses standing to enforce this type of alleged stay violation–unauthorized post-petition transfers of property–in § 549." Id. at 86-7. After finding that the attachment of a lien on property is a transfer of property, the court concluded that § 549 grants an avoidance power solely to the trustee or debtor-in-possession. Id. at 87. Because Pointer was neither the trustee nor the debtor-in-possession, she was not entitled to avoid the post-petition transfer.

Applying the reasoning in Pointer, the Trustee's right to avoid post-petition transfers in this case is granted by § 549. Thus, the analyses of the bankruptcy court and district court of whether the Trustee's assignee had the right under § 362 to avoid the tax sale is flawed. Whatever authority the Trustee had to set

_____

[1]Section 362(h) provides that "[a]n individual injured by any willful violation of a stay provided by [§ 362] shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recovery punitive damages."

8

aside the sale emanates from § 549, and we must remand this case to the district court with instructions to remand to the bankruptcy court for that court to consider:[2] (1) Whether § 549 gave the Trustee the right to set aside the tax sale to the Herringtons. (2) If so, whether that right was transferred to T.A. Grant as part of Grant's purchase of the property from the Trustee. (3) Assuming that right was transferred to T.A. Grant, is his claim time barred under § 549.[3]

## CONCLUSION

We affirm the district court order to the extent it invalidates the tax sale of the interests of J.B. Grant and Coba in the property based upon insufficient notice of the tax sale to those parties.[4] However, we vacate the district court's judgment to the extent that it set aside the tax sale of the interest of T.A. Grant in the property based on violation of the automatic stay. We remand this case to the district court with instructions

---

[2]The bankruptcy court and the district court may answer these questions in whatever order they deem appropriate and only the questions necessary to a resolution of this issue need be answered.

[3]11 U.S.C. § 549(d) states:

"An action or proceeding under this section may not be commenced after the earlier of--

    (1) two years after the date of the transfer sought to be avoided; or
    (2) the time the case is closed or dismissed."

[4]The Herringtons also argue that the bankruptcy court abused its discretion in refusing to retroactively set aside the automatic stay. The bankruptcy court gave compelling reasons for refusing to lift the stay, and we find no error in this ruling.

9

to remand to the bankruptcy court for further proceedings consistent with this opinion.

AFFIRMED in part; VACATED in part and REMANDED.